IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| MARK FEHRS HAUKOHL, § | |
| § | |
| *Plaintiff*, § | |
| § | |
| v. § | CIVIL ACTION NO. 4:24-cv-1627 |
| § | |
| THE TRUSTEES OF THE UNIVERSITY § | |
| OF PENNSYLVANIA d/b/a THE § | |
| UNIVERSITY OF PENNSYLVANIA, § | |
| § | |
| *Defendant*. § | |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Mark Fehrs Haukohl ("Haukohl"), files his Original Complaint against The Trustees of the University of Pennsylvania d/b/a The University of Pennsylvania (the "University of Pennsylvania" or the "University") and, in support thereof, shows the Court as follows:

### I.
### PRELIMINARY STATEMENT

This is a breach of contract case. On October 6, 2022, Haukohl, in the name of the Haukohl Family Collection, and the University of Pennsylvania executed an agreement to display The Haukohl Family Collection of Florentine Baroque art in an exhibition at the Arthur Ross Gallery, on the premises and under the auspices of the University of Pennsylvania (the "Exhibition").

On March 15, 2024, the University canceled the Exhibition without good cause or reasonable basis, and now refuses payment for maintenance, storage, insurance, and transportation costs occasioned by its breach as required by their agreement.

These contractual breaches caused, and continue to cause, Haukohl to incur costs out-of-pocket to care for, maintain, store, insure, and transport the artwork in the interim and to suffer

lost opportunity damages. Haukohl files this lawsuit to recover all damages resulting from the University's disregard of its contractual obligations.

## II.
## PARTIES

1. Plaintiff Haukohl is a natural person domiciled in Houston, Texas. Haukohl is now, and was at the time this action commenced, a citizen of the State of Texas.

2. Defendant, the Trustees of the University of Pennsylvania d/b/a The University of Pennsylvania, is a private university chartered under the laws of the Commonwealth of Pennsylvania, having its principal place of business in Philadelphia, Pennsylvania. The University of Pennsylvania is now, and was at the time this action commenced, a citizen of Pennsylvania. The Trustees of the University of Pennsylvania may receive service of process via personal service on their registered agent: CT Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## III.
## JURISDICTION AND VENUE

3. This Court has personal jurisdiction over the University of Pennsylvania because it purposefully availed itself of the benefits and protections of the State of Texas by conducting business in Texas, advertising and recruiting in Texas, negotiating and entering contracts with known Texas domiciliaries, establishing a registered agent to receive service of process in Texas, and by agreeing that Texas law governs disputes arising out of the transaction at issue here.

4. This Court has subject matter jurisdiction under 28 U.S.C. § 1332, as there is complete diversity of citizenship between the Parties (*i.e.*, no plaintiff shares citizenship with any defendant, as they are citizens of different states) and the amount in controversy exceeds seventy-five thousand dollars ($75,000), exclusive of interests and costs.

5.      Venue is proper in the United States District Court for the Southern District of Texas – Houston Division under 28 U.S.C § 1391 because it is the judicial district and division in which a substantial part of the events or omissions giving rise to Haukohl's claims occurred.

## IV.
## FACTUAL ALLEGATIONS

A.      **BACKGROUND INFORMATION.**

6.      Plaintiff Haukohl possesses the world's largest private collection of Florentine Baroque art outside of Italy (the "Haukohl Family Collection"). The Haukohl Family Collection has been carefully assembled over more than forty years and consists of more than thirty unique artworks, including highly valuable paintings and sculptures.

7.      Haukohl contracts with museums, institutions of higher education, and private collectors from around the world to display the Haukohl Family Collection in their galleries. This practice of "lending" artworks for exhibition allows the public to share in the beauty and historical significance that the artworks possess and enhances the Haukohl Family Collection's value.

8.      Coordinating high-value art exhibitions requires substantial planning efforts by both lenders and borrowers, often starting several years before exhibitions are scheduled to occur. As such, were a borrower to cancel an exhibition unexpectedly, a lender would struggle to find an alternate location to display its artwork during that same period, even if the borrower provided notice several months before the exhibition was set to begin.

9.      Additionally, because antique artwork is unique and very delicate, the items require highly specialized care and protection. Accordingly, there are often significant costs associated with maintaining, storing, insuring, and transporting artworks before, during, and after exhibitions.

3

10. For these reasons, exhibition contracts are often executed well in advance of the exhibition date to specify borrowers' and lenders' obligations and to guarantee the artworks' placement. As detailed below, such was the case for Haukohl's agreement with the University.

B. **HAUKOHL AND THE UNIVERSITY NEGOTIATE BRINGING THE "BEYOND THE MEDICI: THE HAUKOHL FAMILY COLLECTION" EXHIBITION TO THE AUTHUR ROSS GALLERY.**

11. Several years ago, Haukohl began developing plans for a year-long exhibition, entitled "Beyond the Medici: The Haukohl Family Collection," to bring his artwork to several university-affiliated museums across the United States.[1]



---

[1] *See* F. Berti, J. Bradburne, F. Scasciamacchia, E. Schmidt, and F. Sottili, BEYOND THE MEDICI: THE HAUKOHL FAMILY COLLECTION, Musée National d'histoire et d'art Luxembourg (Silvana Editoriale 2018).

4

12. Haukohl specifically wanted to display the Haukohl Family Collection at colleges and universities to provide students (and the public) an opportunity to study works from lesser-known Florentine Baroque artists, allowing them to engage with these works thoughtfully and to gain insights that would help them in other artistic endeavors.

13. Haukohl also specifically identified the University of Pennsylvania as a very desirable location for the Exhibition for several reasons, including his prior relationships with many individuals associated with the University and the greater Philadelphia arts community, and its proximity to New York and other East Coast art markets.

14. For more than two years, the Parties engaged in lengthy negotiations to bring "Beyond the Medici: The Haukohl Family Collection" to the Arthur Ross Gallery for exhibition.

15. The Parties reached a final agreement and memorialized such on **September 19, 2022** (the "Agreement"). The Parties then executed the Agreement on **October 6, 2022**.

16. The Agreement requires Haukohl to "lend up to thirty-two (32) artworks for The Exhibition" in exchange for the University's commitment to "be responsible for the care, maintenance, insurance, transportation, and supervision" of the Collection during the Exhibition Period. Exhibit A at 1-2, §§ II, V. The Agreement also provides that the Exhibition was to "commence [in] approximately October 2024 and run until December 2024." *Id*. at 1, § I.

17. The Agreement also includes additional requirements that both Parties must satisfy to ensure the Exhibition's success. For example, the Agreement requires Haukohl "to provide [at least] one scholarly lecture during the Exhibition," including providing the cost of transportation and an honorarium for a visiting lecturer. *Id* at 2, § IX. Similarly, the Agreement requires the University to develop press releases to promote the Exhibition, to coordinate the publication of a Gallery Pamphlet, to procure sponsorships and underwriting, and to host a Reception and Opening

Night Event for the global professional art community, consisting of international museum directors, curators, and major art collectors from the greater New York and New England areas, as well as university benefactors and trustees. *See*, *e.g.*, *id*. at 2-3, §§ VII, VIII, XI, XII. The inside cover of the Gallery Pamphlet, which has already been printed and distributed, describes the tour:

**Exhibition Dates**



**Rollins Museum of Art, Rollins College**
September 9, 2023 – January 7, 2024

**David Owsley Museum of Art, Ball State University**
February 22 – May 19, 2024

**Arthur Ross Gallery, University of Pennsylvania**
October 5, 2024 - January 5, 2025

2

6

18. The Agreement further states that the University "[u]pon six months prior written notice…may terminate this Agreement prior to the beginning of the Loan Period for good cause," or otherwise "for events reasonably beyond its control" (*i.e.*, force majeure). *Id*. at 4, § XV.

19. Finally, the Agreement states that "If the [University] is unable to perform hereunder, [the University] shall be responsible for all storage, insurance, and transportation fees incurred by [Haukohl]." *Id*.

20. By its terms, the Agreement is subject to Texas law. *Id*. at 3, § XIII.

**C.    THE UNIVERSITY BREACHES THE AGREEMENT WITHOUT GOOD CAUSE.**

21. Over the following weeks and months, the Parties undertook significant efforts to ensure the Exhibition's success. For example, Haukohl contracted to bring "Beyond the Medici: The Haukohl Family Collection" to two other universities, Rollins College (Winter Park, FL) and Ball State University (Muncie, IL), to increase its profile before its arrival in Philadelphia.

22. Similarly, the University prepared and distributed high-quality marketing materials to promote the Exhibition, all of which highlighted Haukohl's vision for and involvement with the Exhibition, as well as the benefits that the Exhibition would provide. The University also applied for grants with high-profile charitable institutions, including the Kress Foundation, to underwrite costs for an academic symposium that the University intended to host in connection with the Exhibition. Haukhol's name, reputation, and personal involvement with the Exhibition greatly strengthened the University's application to the prestigious Kress Foundation.

23. But then, on **March 15, 2024**, without any prior notice, the University wrote to Haukohl to advise that it "w[ould] not host the 'Beyond the Medici' exhibition." The University advised that its basis for unilaterally rescinding the Agreement and canceling the Exhibition is

because "the Arthur Ross Gallery at the University of Pennsylvania will need to be closed this fall to repair a leak in the roof, along with related structural damage to the walls and floors."

24. However, Haukohl's independent investigation revealed that the Arthur Ross Gallery was open and hosting patrons on March 15, 2024, that it remains open today, and that it will continue to remain open through September 15, 2024. Haukohl's investigation also revealed that the Arthur Ross Gallery has no public plans to host *any* exhibitions after September 15, 2024 (*i.e.*, no exhibitions are publicly listed as scheduled to occur in 2025 or beyond).

25. In other words, there is no urgent physical loss or damage that renders the building unsafe for patrons, nor any condition that presents an imminent danger to artwork. If such a condition existed, then the University would have canceled all future exhibitions immediately.

26. Rather, taking the University's claims at face value, it knew it needed to perform building repairs and arbitrarily selected a date to complete those repairs without regard to its contractual duty to host the Haukohl Family Collection, or for the consequences that cancellation would cause. Alternatively, the University has an ulterior motive for canceling the Exhibition and is using its stated need to repair the Arthur Ross Gallery as a pretextual shield to limit its exposure.

27. The University also chose not to offer to host the Exhibition at an alternative, suitable venue within its premises, even though there are other galleries within the University.

28. In any event, the stated basis for the University's decision to terminate the Agreement does not constitute (a) "good cause;" or (b) an "event reasonably beyond [the University's] control." *Id*. at 4, § XV. Therefore, the University is in breach of the Agreement.

29. On **March 25, 2024**, Haukohl responded to the University's cancellation notice with an estimated total of costs that it expected to incur, and which are due and owing under the Agreement. Haukohl also requested that the University remit payment owed by **April 8, 2024**.

30. On **March 28, 2024**, the University responded to Haukohl's requests, claiming that "it [was] not clear why the Gallery would pay to insure the Collection in the absence of an exhibit at the Gallery," and questioning "why the Gallery would bear the costs of transportation." The University further advised that it was "working with [its] lawyers to respond" to Haukohl's requests "as quickly as possible." However, Haukohl received no additional response from the University regarding reimbursement of costs owed under the Agreement, nor has he received any separate communication to further explain the Exhibition's cancellation.

31. The University's refusal to pay fees owed to Haukohl constitutes a separate breach of the Agreement, and the damages sustained go beyond mere reimbursement of expenses incurred in mitigation and as partial compensation for the breach. Therefore, Haukohl has no choice but to file suit to recover all damages resulting from the University's unexcused and willful breach.

## V.
## CAUSES OF ACTION

**COUNT 1 – BREACH OF CONTRACT**

32. Haukohl incorporates paragraphs 1 – 31 as if fully stated herein.

33. Haukohl and the University negotiated and entered a valid, enforceable contract.

34. The University accepted and executed the Agreement and, therefore, is bound by its terms and conditions. *Id*.

35. The University has breached, and continues to breach, the Agreement by canceling the Exhibition without good cause or reasonable basis, and by refusing to pay costs to care for, maintain, store, insure, and transport the artwork as required thereunder.

36. As a result of the University's breaches of the Agreement, Haukohl has suffered, and continues to suffer, cognizable legal injuries.

37. Therefore, Haukohl is entitled to recover actual damages caused by the University's refusal to pay costs due and owing under the contract, as well as additional direct and consequential damages, including, but not limited to, lost opportunity costs, sustained as a result thereof.

**COUNT 2 - ATTORNEYS' FEES AND COSTS**

38. Haukohl incorporates paragraphs 1 – 37 as if fully stated herein.

39. Haukohl retained the undersigned counsel to represent him in this action and has agreed to pay reasonable and necessary attorneys' fees. Pursuant to section 38.001 of the Texas Civil Practice & Remedies Code, and as further allowed by law, Haukohl is entitled to recover reasonable and necessary attorneys' fees and expenses that are incurred in the prosecution of this matter and any subsequent appeal. TEX. CIV. PRAC. & REM. CODE § 38.001.

## VI.
## CONDITIONS PRECEDENT

40. Haukohl affirmatively pleads that all conditions precedent to its claims for relief have been performed or have occurred.

## VII.
## JURY DEMAND

41. Haukohl demands a jury trial and tenders the appropriate fee with this Complaint.

## VIII.
## PRAYER

For these reasons, Mark Fehrs Haukohl requests that the Court enter judgment against The Trustees of the University of Pennsylvania; award (a) all damages, (b) attorneys' fees and costs, and (c) pre-judgment and post-judgment interest as allowed by law; and grant all such other and further relief to which Haukohl shows himself entitled, whether at law or in equity.

Date: April 30, 2024

Respectfully submitted,

PILLSBURY WINTHROP SHAW PITTMAN LLP

By: */s/ William D. Wood*
William D. Wood
State Bar No. 21916500
William E. McMichael
State Bar No. 24107860
609 Main, Suite 2000
Houston, TX 77002
Telephone: (713) 276-7600
Facsimile: (713) 276-7673
william.wood@pillsburylaw.com
william.mcmichael@pillsburylaw.com

***Attorneys for Plaintiff Mark Fehrs Haukohl***